## UNITED STATES *v.* COOPER CORPORATION ET AL.

No. 484. Argued March 6, 1941.—Decided March 31, 1941.

*Mr. Hugh B. Cox,* with whom *Solicitor General Biddle* and *Assistant Attorney General Arnold* were on the brief, for the United States.

*Mr. Luther Day,* with whom *Messrs. Robert Guinther, Lyman M. Bass, Paul H. Arthur, John C. Bruton, Jr.,*

*Charles Wesley Dunn, Thurlow M. Gordon, Paul Van Anda,* and *Joseph F. Murray* were on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

We took this case because it presents the important question whether the United States may maintain an action for treble damages under § 7 of the Sherman Act.[1]

The complaint charged the respondents had illegally

---

[1] Act of July 2, 1890, c. 647, 26 Stat. 209, 210.

combined and conspired to fix collusive prices of articles purchased by the United States; alleged the money damage inflicted upon the United States thereby, and sought judgment for three times that amount. The District Court granted a motion to dismiss the complaint on the ground that the United States is not a person as the term is used in § 7 of the Sherman Act.[2] The Circuit Court of Appeals affirmed the judgment.[3]

Section 7 provides:

"Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

The United States is a juristic person in the sense that it has capacity to sue upon contracts made with it or in vindication of its property rights. The Sherman Act, however, created new rights and remedies which are available only to those on whom they are conferred by the Act.[4] The precise question for decision, therefore, is whether, by the use of the phrase "any person," Congress intended to confer upon the United States the right to maintain an action for treble damages against a violator of the Act.

Since, in common usage, the term "person" does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it.[5] But there is no hard

---

[2] 31 F. Supp. 848.

[3] 114 F. 2d 413.

[4] *Wilder Mfg. Co.* v. *Corn Products Refining Co.*, 236 U. S. 165, 174; *Fleitmann* v. *Welsbach Street Lighting Co.*, 240 U. S. 27, 29; *Geddes* v. *Anaconda Copper Mining Co.*, 254 U. S. 590, 593.

[5] *United States* v. *Fox*, 52 N. Y. 530; *Id.*, 94 U. S. 315, 321.

and fast rule of exclusion. The purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law.[6]

The Government admits that often the word "person" is used in such a sense as not to include the sovereign but urges that where, as in the present instance, its wider application is consistent with, and tends to effectuate, the public policy evidenced by the statute, the term should be held to embrace the Government. And it strongly urges that all the considerations which moved Congress to confer the right to recover damages upon individuals and corporations injured by violations of the Act apply with equal force to the United States, which, as a large procurer of goods and services, is as likely to be injured by the denounced combinations and monopolies as is a natural or corporate person. We are asked, in this view, so to construe the Act as not to deny to the Government what public policy is thought to require.

Decision is not to be reached by a strict construction of the words of the Act, nor by the application of artificial canons of construction. On the contrary, we are to read the statutory language in its ordinary and natural sense, and if doubts remain, resolve them in the light, not only of the policy intended to be served by the enactment, but, as well, by all other available aids to construction. But it is not our function to engraft on a statute additions which we think the legislature logically might or should have made.[7]

---

[6] See *Levy* v. *McCartee*, 6 Pet. 102, 110; *United States* v. *Freeman*, 3 How. 556, 565; *Ohio* v. *Helvering*, 292 U. S. 360, 370; *Nardone* v. *United States*, 302 U. S. 379.

[7] *The Pedro*, 175 U. S. 354, 364; *Dewey* v. *United States*, 178 U. S. 510, 519, 520; *Pirie* v. *Chicago Title & T. Co.*, 182 U. S. 438, 451; *White* v. *United States*, 191 U. S. 545, 551, 552; *Ebert* v. *Poston*, 266 U. S. 548, 554; *Helvering* v. *Oregon Life Ins. Co.*, 311 U. S. 267, 272.

The recent expressions of this court in *Tigner* v. *Texas,* 310 U. S. 141, 148, 149, warn that it is not for the courts to indulge in the business of policy-making in the field of antitrust legislation. Congress has not left us at large to devise every feasible means for protecting the Government as a purchaser. It is the function of Congress to fashion means to that end, and Congress has discharged this duty from time to time according to its own wisdom. Our function ends with the endeavor to ascertain from the words used, construed in the light of the relevant material, what was in fact the intent of Congress.

■ Without going beyond the words of the section, the use of the phrase "any person" is insufficient to authorize an action by the Government. This conclusion is supported by the fact that if the purpose was to include the United States, "the ordinary dignities of speech would have led" to its mention by name.[8] It is supported also by the collocation of the phrase in the section. The provision is that "any person" injured by violation of the Act "by any other person or corporation" may maintain an action for treble damages against the latter. It is hardly credible that Congress used the term "person" in different senses in the same sentence. Yet, unless it did, the United States would not only be entitled to sue but would be liable to suit for treble damages. The more natural inference, we think, is that the meaning of the word was in both uses limited to what are usually known as natural and artificial persons, that is, individuals and corporations. In addition, the concluding words of the section give the injured party, as part of his costs, a reasonable attorney's fee,—a provision more appropriate for a private litigant than for the United States.

■ The connotation of a term in one portion of an Act may often be clarified by reference to its use in others.

___

[8] *Davis* v. *Pringle,* 268 U. S. 315, 318.

The word "person" is used in several sections other than § 7. In §§ 1, 2, and 3 the phrase designating those liable criminally is "every person who shall" etc. In each instance it is obvious that while the term "person" may well include a corporation it cannot embrace the United States. In § 8 Congress attempted to make clear that the term "person" is to include a corporation. The provision is "that the word 'person,' or 'persons,' wherever used in this act shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country." The very fact, however, that this sweeping inclusion of various entities was thought important to preclude any narrow interpretation emphasizes the fact that if the United States was intended to be included Congress would have so provided expressly. We may say in passing that the argument that the United States may be treated as a corporation organized under its own laws, that is, under the Constitution as the fundamental law, seems so strained as not to merit serious consideration. It is fair to assume that the term "person," in the absence of an indication to the contrary, was employed by the Congress throughout the Act in the same, and not in different, senses.

■ The scheme and structure of the legislation are likewise important to a proper ascertainment of its purpose and intent. Sections 1, 2, and 3 impose criminal sanctions for violations of the acts denounced in those sections respectively. Section 4 gives jurisdiction to the federal courts of proceedings by the Government to restrain violations of the Act and imposes upon United States Attorneys the duty to institute equity proceedings to that end. Section 5 regulates service in such suits. Section 6 authorizes seizure, in the course of interstate transportation, of goods owned under any contract or pursuant to any conspiracy made illegal by the statute.

Thus far the Act deals in detail with the criminal and civil remedies of the Government in vindication of the policy of the legislation. There follows § 7, the only other substantive section, giving a civil action for an injury to property rights.

It seems evident that the Act envisaged two classes of actions,—those made available only to the Government, which are first provided in detail, and, in addition, a right of action for treble damages granted to redress private injury. If this be the fair construction of the Act, the Court's task is finished when it gives effect to the purposes of the law, evidenced by the various remedies it affords for different situations. Though the law gave a remedy by way of injunction at the suit of the United States, we were pressed to say that a private person should have the same remedy. We were compelled to answer that Congress had not seen fit so to provide.[9] For the like reasons we cannot hold that since a private purchaser is given a remedy for his losses in treble damages, the United States should be awarded the same remedy.

■ Supplemental legislation lends support to the view that Congress had in mind the distinction between public and private remedies and did not intend to confer a right of action on the United States by the use of the phrase "any person" in § 7. The antitrust provisions of the Wilson Tariff Act [10] follow the same pattern as the Sherman Act. Section 73 [11] denounces combinations and agreements between parties importing articles from a foreign country and declares that every person guilty of

---

[9] *Minnesota* v. *Northern Securities Co.*, 194 U. S. 48, 71; *Paine Lumber Co.* v. *Neal,* 244 U. S. 459. The Act was amended to authorize suits for injunctions by private litigants. See the Clayton Act of October 15, 1914, c. 323, § 16, 38 Stat. 730, 737; 15 U. S. C. § 26.

[10] Act of August 27, 1894, c. 349, 28 Stat. 509, as amended by Act of Feb. 12, 1913, c. 40, 37 Stat. 667; 15 U. S. C. § 8.

[11] 28 Stat. 570, 37 Stat. 667.

violation of its terms shall be punished. Section 74 confers jurisdiction upon the federal courts and authorizes proceedings in equity by the United States to restrain such acts. Section 76 provides for seizure and forfeiture of property imported into the United States contrary to law and § 77 gives an action for treble damages to any person against any other person or corporation in the exact words of § 7 of the Sherman Act.

The antidumping provisions of the Revenue Act of 1916 [12] make it a criminal offense for "any person" importing articles from a foreign country to sell, or cause to be imported or sold, such articles within the United States at substantially less than the market value of such articles at the time of exportation in the principal markets of the country of production, etc. They further declare that any person injured in his business or property by any violation may sue therefor in the United States courts and recover threefold damages and costs, including a reasonable attorney's fee. It must be obvious that the United States cannot be embraced by the phrase "any person" there used.

When Congress came to supplement the Sherman Act by the Clayton Act, [13] it included in the latter a significant section bearing upon the question under consideration. Doubts had arisen as to whether issues adjudicated in a criminal proceeding or a suit in equity brought by the United States should be taken as concluded in an action for treble damages subsequently brought by an injured party. By § 5 of the Clayton Act it was sought to give such adjudication that effect. The section provides:

"A final judgment or decree hereafter rendered in any criminal prosecution or in any suit or proceeding in

---

[12] Act of September 8, 1916, c. 463, 39 Stat. 756, 798, 15 U. S. C. § 72.

[13] Act of October 15, 1914, c. 323, 38 Stat. 730.

equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* This section shall not apply to consent judgments or decrees entered before any testimony has been taken."

Immediately following this provision the section continues:

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

Here again it seems clear that Congress recognized the distinction between proceedings initiated by the Government to vindicate public rights and actions by private litigants for damages.

It should be noted that § 1 of the Clayton Act again defined the term "person" exactly as it was defined by § 8 of the Sherman Act, and § 4 again enacted that any person injured by a violation might recover treble damages together with a reasonable attorney's fee.

■ There has been a considerable body of judicial expression to the effect that § 7 authorizes an action for damages only by private suitors and not by the Government.[14] While none of the cases presented the exact ques-

---

[14] *Pidcock* v. *Harrington,* 64 F. 821, 822; *Lowenstein* v. *Evans,* 69 F. 908, 911; *Greer, Mills & Co.* v. *Stoller,* 77 F. 1, 3; *City of Atlanta* v.

tion here involved, the statements bearing on the subject exhibit a uniform opinion contrary to the Government's present contention.

■ The legislative history is persuasive that the Sherman Act was not intended to give the United States a civil action for damages. Senator Sherman, on March 18, 1890, introduced a bill which, in § 1, provided that the United States might bring various civil actions and, in § 2, that "any person" should be entitled to sue any "person" or "corporation" for double damages.[15]

In the discussion of the bill it was pointed out that § 1 authorized the United States to bring civil actions including those for simple damages and that, under § 2, private parties were entitled to sue for double damages. Senator Sherman stated that § 2 gave a right to sue for double damages only to private parties and not to the United

_Chattanooga Foundry Co._, 101 F. 900, 904; _Standard Sanitary Mfg. Co._ v. _United States_, 226 U. S. 20, 52; _United States_ v. _Patterson_, 201 F. 697, 714; _General Investment Co._ v. _Lake Shore & Michigan So. Ry. Co._, 260 U. S. 261, 286; _Glenn Coal Co._ v. _Dickinson Fuel Co._, 72 F. 2d 885, 889; _Quemos Theatre Co._ v. _Warner Bros. Pictures_, 35 F. Supp. 949, 950; _Tigner_ v. _Texas_, 310 U. S. 141, 148.

[15] "Section 1:

". . . And the circuit court of the United States shall have original jurisdiction of all suits of a civil nature at common law or in equity arising under this section, and to issue all remedial process, orders, or writs proper and necessary to enforce its provisions. And the Attorney-General and the several district attorneys are hereby directed, in the name of the United States, to commence and prosecute all such cases to final judgment and execution."

"Section 2:

"That any person or corporation injured or damnified by such arrangement, contract, agreement, trust, or combination defined in the first section of this Act may sue for and recover, in any court of the United States of competent jurisdiction, without respect to the amount involved, of any person or corporation a party to a combination described in the first section of this Act, twice the amount of damages sustained and the costs of the suit, together with a reasonable attorney's fee."

States. He stated that the civil suit by the United States authorized by § 1 might be for an ouster of the power of the corporation, for damages, or in *quo warranto,* and added: "But the second section provides purely a personal remedy, a civil suit also by citizens of the United States." [16]

As is well known, after Senator Sherman's bill had been amended, Senator Hoar rewrote most of the bill. In so doing he eliminated § 1 with its provision for civil suits by the United States and substituted §§ 1, 2, 3, 4, and 6, specifying the remedies, civil, criminal, and by way of forfeiture, available to the United States. In that revision he retained, with slight change, § 2 of the bill, increasing the recoverable damages to treble instead of double, and renumbered the section as § 7. In this form the bill was adopted.

As already stated, the language of § 7 of the Sherman Act was repeated in later statutes extending the antitrust laws although in the meantime this and other courts had expressed the view that the section accorded the Government no right of suit for treble damages. When the Clayton Act was before the Senate, Senator Culberson, Chairman of the Committee which reported the bill, enumerated the usual types of action prosecuted under the Sherman Act,—criminal prosecutions, suits in equity, and actions for damages, and stated with respect to Government suits under the Sherman Act and the Clayton Act: "There is no suit authorized by any of these statutes except a criminal prosecution or a suit in equity. The United States does not bring a suit at law for damages." [17]

---

[16] 21 Cong. Rec. 2563-2564.

[17] 51 Cong. Rec. 13898. Statements by members of the House Judiciary Committee indicate a similar view: 51 Cong. Rec. 9079, 9490. Representative Webb the chairman of that Committee mentioned the civil remedies available under the bill as treble damage

In 1926 the Attorney General, in response to a Senate Resolution asking for information with respect to cases instituted under the first seven sections of the Sherman Act, wrote: "Under Section 7, which gives to private persons the right to sue for injuries arising under the act, a number of actions have been instituted. The United States, however, under the statute is not a party to suits under that section." [18]

Senator O'Mahoney has introduced a bill, which is pending as S. 2719, prepared jointly by him and by the Assistant Attorney General in charge of antitrust matters. On June 28, 1939, the Senator stated that the purpose of the bill was to provide more effective civil remedies. In the course of his statement he said: "There is only one other remedy worth mentioning available under existing law to the Department of Justice—the civil action for an injunction. In addition, there is the action in damages by a private person who has been injured. Neither of these remedies is effective." He further stated: "The bill permits the United States, in effect, to bring a suit for damages against an offending corporation and against its individual directors and officers." [19]

■ It is significant that, in the light of the expressions by the courts, the supplemental legislation, and the legislative history, no action has ever been brought by the United States under § 7 in the fifty years during which

actions by persons, suits by the Federal Trade Commission, suits by the United States for injunctions, and similar suits by persons. He then said "Certainly the remedies are cumulative. The remedies pile up, and all of the remedies are open to the individual and to the Government in a suit." 51 Cong. Rec. 16276. But obviously he meant that the remedies given the public and the individual *respectively* were cumulative, as they clearly are; for it is plain the remedy given the Federal Trade Commission is not afforded to the individual.

[18] Sen. Doc. No. 79, 69th Cong., 1st Sess., p. 1.

[19] 84 Cong. Rec. 8192.

the statute has been in force until the present action was instituted. Down to the close of the year 1937, 428 criminal prosecutions and suits in equity had been instituted by the Government.[20] Down to December, 1939, 103 civil suits had been instituted by private persons, including corporations.[21] In the meantime the World War intervened with the Government a purchaser of enormous quantities of material and supplies. Then, as now, the complaint was prevalent that agreements and conspiracies existed to fix and maintain prices of materials needed by the Government. And throughout the life of the legislation able and vigilant officials devoted to enforcement of the policy of the Sherman Act have not been wanting.

In these circumstances the conviction that no right to sue had been given the Government, rather than a supine neglect to resort to an available remedy, seems to us the true explanation of the fact that no such actions have been instituted by the United States.

In summary, we are of opinion that the text of the Act, taken in its natural and ordinary sense, makes against the extension of the term "person" to include the United States, and that the usual aids to construction, taken together, instead of inducing the contrary conclusion, go to support the view that Congress did not use the word in the sense for which the Government contends.

The judgment is

*Affirmed.*

---

[20] "Federal Antitrust Laws," published by the Department of Justice January 1938.

[21] 49 Yale Law Journal 296.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, dissenting.

In order to give purchasers of goods an opportunity to buy them at prices fixed by competitive trade, the Sherman Act made it illegal to fix prices by combination or conspiracy. It is difficult for me to believe that Congress did not intend to give equal protection to all purchasers similarly injured. In my judgment, no language of that Act, nothing in its history, and no argument now presented for our consideration makes necessary the conclusion that Congress intended to discriminate in favor of some purchasers and against others. It would require clear and unequivocal statutory language to persuade me that Congress intended to grant a remedy to all except one of those who were injured by trust prices—the "all" including every natural and artificial person, every corporation and association,[1] foreign and domestic, and the single exception

---

[1] A 1940 report to the Senate, made by the Secretary of the Treasury pursuant to a Senate Resolution, revealed that the federal government was transacting part of its business through the medium of at least 1469 government corporations. Senate Document No. 172, 76th Cong., 3rd Sess., Part 1, p. 4. The judgment here does not foreclose such corporations from suing for damages under § 7, or so I assume. If I am correct in my assumption, the result is that as to those purchases made by its corporate agencies, the Government is protected by the Sherman Act, while as to those purchases made by its non-corporate agencies, it is not so protected. A process of statutory construction which results in giving to government corporations a right denied to constitutionally authorized government departments seems to me to conflict with the frequently declared rule that a statute should not be interpreted in such way as to produce an unreasonable or unjust result. See *United States* v. *American Trucking Associations,* 310 U. S. 534, 542–543; *Sorrells* v. *United States,* 287 U. S. 435, 446.

being the United States, which buys more goods and services than any other single purchaser.[2]  No such clear and unequivocal statutory language exists.  And no plausible reason has been hazarded to prove that the government as a purchaser of goods needs less protection from unlawful combinations than do other buyers.[3]  Many deplorable instances in our history, in fact, indicate the contrary.  Congress, no doubt stimulated to action by these historical occurrences, has by numerous enactments recognized the urgent necessity for safeguarding governmental purchases of goods and services against unfair and collusive price-fixing.  To that end, competitive bidding as a prerequisite to government contracts has been the general statutory rule over a long period of years, and combinations to deprive the government of the advantages of such competition have been made criminal.  It is therefore strange indeed that the Sherman Act, the greatest of all legislative efforts to make competition, not combination, the law of trade, should now be found to afford a greater protection against collusive price-fixing to every other buyer in the United States than is afforded to the United States itself.

So much for what seems to me to be the logical approach to the problem, and the one that should cause us to say that the government can sue for damages.  If, however, we apply familiar canons of construction, I think we are led to the same result.  For it is a primary principle that a law should be construed so as to carry

---

[2] For a recent study, see "Government Purchasing—An Economic Commentary," Monograph No. 19 of the Temporary National Economic Committee (1940).

[3] An argument is offered to the effect that the government has no need of a right to damages, because it has the power to bring criminal and injunctive proceedings.  But the right to bring those proceedings is given to the government for the protection of the public, rather than for its self-protection as a purchaser.  Further, criminal and injunctive proceedings, whatever their efficacy, do not achieve the object of § 7, which is to indemnify all injured purchasers.

out its purpose, in the light of the evil aimed at and the protection intended to be afforded. Here, among the evils legislated against was price-fixing by combination, and among the remedies afforded was the giving of a right of action to purchasers injured by prices so fixed. The result of this case—denying to the largest single purchaser of all goods manufactured and sold in the nation the protection afforded by this legislation—is to restrict the remedy in such way that the evil aimed at is less likely to be suppressed. For the construction given the Sherman Act, insofar as sales to the government and civil damages are concerned, enables those guilty of violating it to elude its provisions, escape its consequences, and defeat its objects.

Nor do I believe that the previous failure of the Attorneys General of the United States to bring actions similar to this should be deemed a persuasive reason to read the government out of the Act's benefits. The 1926 statement of the Attorney General to the effect that "the United States . . . is not a party to suits under" § 7 does not supply such a reason. For in the quoted statement the Attorney General did not take the position that the government lacked the power to sue for civil damages; apparently what he had reference to was the fact that the Sherman Act did not make the United States a party to actions for civil damages by private persons against private persons. We do not know and cannot possibly determine why no prior suits were instituted for the benefit of the government. To assign reasons for such inaction is but to guess. And the guesses would doubtless vary almost in accordance with the preconceived notions of the guessers. But whatever might have been the reasons behind the government's failure to sue, sure it is that the Attorney General is not the purchasing agent of the government. He cannot be assumed to have constant knowledge of the manifold prob-

lems that face those who buy the government's supplies. In the final analysis, it is probably true that even an Attorney General who might zealously desire to enforce the criminal provisions of the Sherman Act would not likely be stimulated to institute civil proceedings for damages unless his attention was directed to the point by keenly alert and diligent purchasing agencies. To attempt to construe the Sherman Act by a vain effort to appraise the reasons responsible for the non-action of Attorneys General is a journey into the realm of imponderables I find it unnecessary to take. I would simply read the Act from its language and manifest purpose as giving all purchasers of goods a right to sue if they have been injured as the result of prices held up by those types of unlawful combination condemned by the Act.[4]

The principle of strict construction now adopted in this case, resulting as it does in denying to the government the benefit of § 7 of the Sherman Act, is a radical departure from a long established policy under which the courts have construed laws most liberally in order to de-

---

[4] Though the Act is all-inclusive in naming those who may sue for damages, it is not equally all-inclusive in describing those acts which may be regarded as unlawful combinations. This is true both because of the original language and objects of the Sherman Act itself, and because of subsequent legislation. The most notable example of such subsequent legislation is that portion of the Clayton Act which provides: "The labor of a human being is not a commodity or article of commerce. Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations . . . or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws." 38 Stat. 731, 15 U. S. C. § 17. See *Apex Hosiery Co.* v. *Leader*, 310 U. S. 469.

clare the government entitled to their benefits.[5] And certainly it can hardly be denied that the language of the Act, giving all persons a right of action, should if liberally construed be held to justify suit by the United States. For in *Cotton* v. *United States,* 11 How. 229, 231, decided forty years before the Sherman Act was adopted, this Court said in speaking of the United States: "Every sovereign State is of necessity a body politic, or artificial person, and as such capable of making contracts and holding property. . . . It would present a strange anomaly, indeed, if, having the power to make contracts and hold property as other persons, natural or artificial, they were not entitled to the same remedies for their protection." And, speaking in similar vein in *Helvering* v. *Stockholms Enskilda Bank,* 293 U. S. 84, 92, after having cited Blackstone for the proposition that the sovereign is a "corporation," and after having gone even beyond this to hold that the statutory word "resident" included the United States, the Court said: "This may be in the nature of a legal fiction; but legal fictions have an appropriate place in the adminis-

---

[5] It is argued that if the government can sue for damages it may also be sued for damages. That question is not before us and need not be decided. Other principles will be material if such a question ever should be presented. See *United States* v. *Sherwood, ante,* p. 584; *Nardone* v. *United States,* 302 U. S. 379, 383–384; *United States* v. *Knight,* 14 Pet. 301, 315. Among these principles the most important is that of sovereign immunity. "The sovereignty of the United States raises a presumption against its suability, unless it is clearly shown; nor should a court enlarge its liability to suit beyond what the language [of the statute in question] requires." *Eastern Transportation Co.* v. *United States,* 272 U. S. 675, 686; *Price* v. *United States,* 174 U. S. 373, 375–376; *United States* v. *Sherwood, ante,* 584.

tration of the law when they are required by the demands of convenience and justice." [6]

These particular cases are but facets of a general rule that has long been accepted—the United States can exercise all of the legal remedies which other persons, bodies or associations can exercise, both at common law and under statutes,[7] unless there is something in a statute or in its history to indicate an intent to deprive the United States of that right.[8] In this case, nothing in the Sherman Act itself and nothing in its legislative history makes necessary the conclusion that Congress intended to withhold from the United States a remedy given to all other purchasers.[9] Under these circumstances, it is my opinion that the judgment below should be reversed.

MR. JUSTICE REED and MR. JUSTICE DOUGLAS join in this dissent.

---

[6] To this statement the Court added: "If to carry out the purposes of a statute it be admissible to construe the word 'person' as including the United States [cases to that effect having previously been cited], it is hard to see why, in like circumstances, it is inadmissible to construe the word 'resident' as likewise including the United States." Cf. *Ohio* v. *Helvering*, 292 U. S. 360, 370–71; *Stanley* v. *Schwalby*, 147 U. S. 508, 517.

[7] See *Dugan* v. *United States*, 3 Wheat. 172; *United States* v. *Gear*, 3 How. 120; *Cotton* v. *United States*, *supra*. Cf. *Dollar Savings Bank* v. *United States*, 19 Wall. 227; *United States* v. *Chamberlin*, 219 U. S. 250.

[8] Cf. *Davis* v. *Pringle*, 268 U. S. 315.

[9] The legislative history of the Sherman Act is not enlightening on the question now before us. At best, all that can be said of the very few and scattered statements that were made on the subject during the debates on the Clayton Act is that they look both ways.